UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAUL M. MANN,

    Plaintiff,

 v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

CASE NO. C05-5309RJB

REPORT AND RECOMMENDATION

Noted for February 17, 2006

  Plaintiff, Paul M. Mann, has brought this matter for judicial review of the denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Robert J. Bryan's review.

FACTUAL AND PROCEDURAL HISTORY

  Plaintiff currently is sixty-one years old.[1] Tr. 536. He has a high school education and three years of college course work, and has past work experience as a house painter, store laborer, school custodian, and

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

1  truck driver. Tr. 135, 140, 478.

2        On November 20, 1995, plaintiff filed an application for disability insurance benefits, which was
3  denied initially and on reconsideration, and by an administrative law judge ("ALJ") on January 21, 1998. Tr.
4  79-90, 477. On October 3, 2000, plaintiff's request for review was granted by the Appeals Council, which
5  remanded the matter for a new hearing because it was unable to locate or redevelop the record upon which
6  the ALJ based his decision. Tr. 103-04.

7        On remand, a new hearing was held before a different ALJ, Ruperta Alexis, on August 14, 2001, at
8  which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational
9  expert. Tr. 30-74. On October 9, 2001, ALJ Alexis issued a decision, determining plaintiff to be not
10 disabled, finding specifically that he was capable of performing other jobs existing in significant numbers in
11 the national economy. Tr. 21-29. Plaintiff's request for review was denied by the Appeals Council. Tr. 7-8.
12 Plaintiff appealed the Commissioner's decision to this court, which, on January 7, 2004, remanded the
13 matter to the Commissioner for additional administrative proceedings to further consider whether plaintiff
14 suffered from a severe mental impairment. Tr. 613-17.

15       On remand from this court, another hearing was held before ALJ Alexis on November 30, 2004, at
16 which, plaintiff, represented by counsel, appeared and testified, as did a lay witness, a medical expert, and a
17 vocational expert. Tr. 485-535. On March 7, 2005, ALJ Alexis issued a decision, again determining
18 plaintiff to be not disabled, finding specifically in relevant part as follows:

19     (1)    at step one of the disability evaluation process, plaintiff had not engaged in
              substantial gainful activity during the relevant time period;
20
       (2)    at step two, plaintiff had "severe" impairments consisting of atypical bipolar
21            disorder, degenerative disc disease and lumbar strain;

22     (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of
              those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;
23
       (4)    at step four, plaintiff had the residual functional capacity to perform light to
24            medium work, with an additional limitation to superficial interaction with the
              public, coworkers and supervisors; and
25
       (5)    at step five, plaintiff was capable of performing other jobs existing in significant
26            numbers in the national economy.

27 Tr. 482-83. It does not appear from the record that the Appeals Council assumed jurisdiction of the case.
28 20 C.F.R. § 404.984. The ALJ's decision therefore became the Commissioner's final decision after sixty

REPORT AND RECOMMENDATION
Page - 2

days. Id.

On May 6, 2005, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits for the following reasons:

(a) the ALJ erred by not adopting the findings and opinions of Dr. Norman Gustavson, the medical expert who testified at the most recent administrative hearing;

(b) the ALJ erred in assessing plaintiff's credibility;

(c) the ALJ erred in failing to provide "germane" reasons for rejecting the testimony of the lay witness who testified at the most recent administrative hearing;

(d) the ALJ erred in assessing plaintiff's residual functional capacity; and

(e) the hypothetical question the ALJ posed to the vocational expert at the most recent administrative hearing failed to include all of plaintiff's impairments and limitations.

Defendant admits the ALJ erred in finding plaintiff not disabled, but argues this matter should be remanded to the Commissioner for further administrative proceedings. The undersigned also finds the ALJ erred in determining plaintiff to be not disabled, and, for the reasons set forth below, recommends this matter be remanded for further administrative proceedings. While plaintiff also has requested oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on

1   or before" the date his insured status expired. <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998); <u>see also</u>
2   <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security
3   statutory scheme requires disability to be continuously disabling from time of onset during insured status to
4   time of application for benefits, if individual applies for benefits for current disability after expiration of
5   insured status). Plaintiff's date last insured was December 31, 1992. Tr. 478. Therefore, to be entitled to
6   disability insurance benefits, plaintiff must establish he was disabled prior to or as of that date. <u>Tidwell</u>, 161
7   F.3d at 601.

8   II.   <u>Dr. Gustavson's Testimony and the Listings</u>

9        At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if
10  they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the
11  "Listings"). 20 C.F.R § 404.1520(d); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the
12  claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. <u>Id.</u> The burden of
13  proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings.
14  <u>Tacket</u>, 180 F.3d at 1098.

15       A mental or physical impairment "must result from anatomical, physiological, or psychological
16  abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20
17  C.F.R. § 404.1508. It must be established by medical evidence "consisting of signs, symptoms, and
18  laboratory findings." <u>Id.</u> An impairment meets a listed impairment "only when it manifests the specific
19  findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.
20  An impairment equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs,
21  and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed
22  impairment." <u>Id.</u> at *2. However, "symptoms alone" will not justify a finding of equivalence. <u>Id.</u>

23       Plaintiff argues the ALJ erred in failing to adopt Dr. Gustavson's testimony that he had a marked
24  limitation in concentration, persistence and pace, and that he had a "[m]edically documented history of a
25  chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of
26  ability to do basic work activities," and that involves "[a] residual disease process that has resulted in such
27  marginal adjustment that even a minimal increase in mental demands or change in the environment would be
28  predicted to cause the individual to decompensate." Tr. 527; 20 C.F.R. Part 404, Subpart P, Appendix 1, §

REPORT AND RECOMMENDATION
Page - 4

12.04(C)(2). Such error, plaintiff asserts, requires reversal and remand for an outright award of benefits. The undersigned disagrees.

At the most recent administrative hearing the medical expert, Dr. Norman Gustavson, provided testimony regarding the alleged mental impairments and limitations plaintiff had during the period prior to his date last insured. With respect to that testimony, the ALJ found as follows:

> With regard to evidence gathered at the hearing, I note that in response to questioning, the medical expert testified that the claimant's mental impairments did not meet or equal any listed impairments during the relevant period. He identified the claimant as having atypical bipolar disorder, an impairment which would be listed under [20 C.F.R. Part 404, Subpart P, Appendix 1,] §12.04. However, he suggested that the claimant's mental limitations met the C criteria during the relevant period. I disagree. Specifically, Dr. Gustavson testified that the claimant met the requirements of C B 1(2). I specifically find that conclusion is not supported by the medical evidence or the claimant's testimony. The examinations during the relevant period do not show any evidence of manic illness unresponsive to treatment. Exhibit 26F. The medical records indicate the claimant was sufficiently motivated for his back surgery that he was abstaining from alcohol, attending AA meetings and was not experiencing any symptoms of mania or depression. Exhibit 26F[.] He was also a full time student and reported physical problems with continuing school. He reported good control of symptoms. He was treated with Motrin and appeared responsive to medication.
>
> I find that the claimant had an atypical bipolar disorder during the relevant period. His activities of daily living were only mildly limited. Prior to his incarceration, the claimant was married and his wife worked outside of the home. The claimant was capable of independent care and contributing to the maintenance of his household. With regard to social functioning, the claimant was moderately limited by his incarceration and domestic issues related to his offense. There is no evidence that the claimant's social activities and interaction changed considerably before or after the relevant period.
>
> I find that during the relevant period the claimant was moderately limited in concentration, persistence or pace. I note that the medical expert testified that the claimant had a "marked" limitation in this area. However, I do not believe his opinion is supported by the contemporaneous notes contained in Exhibit 26F. Further, a Psychiatric Evaluation performed during his incarceration found the claimant had "excellent concentration[,]" there was no evidence of a thought disorder, his judgment was intact and he was able to abstract easily. Exhibit 10F. There is no other evidence in the medical file to support a marked impairment in concentration, persistence or pace. With regard to episodes of decompensation, I find evidence of one such episode. I specifically find no evidence of the C criteria.

Tr. 479-80. The undersigned finds the ALJ's reasons for not adopting Dr. Gustavson's limitations to be in general supported by the substantial medical evidence in the record.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must

REPORT AND RECOMMENDATION
Page - 5

be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

First, with respect to Dr. Gustavson's opinion that plaintiff had a marked limitation in the area of

REPORT AND RECOMMENDATION
Page - 6

concentration, persistence or pace, no other medical source in the record found plaintiff to be so limited prior to or as of his date last insured. Indeed, plaintiff's concentration was noted to be "excellent" during a psychiatric evaluation performed in late June 1991. Tr. 200. The medical expert who testified at the first administrative hearing noted this to be the case as well, and further testified that none of plaintiff's mental impairments met or equaled any of those contained in the Listings. Tr. 59-60. Thus, given the conflicting medical evidence in the record concerning this issue, the undersigned cannot say the ALJ erred in rejecting the marked limitation found by Dr. Gustavson.

With respect to Dr. Gustavson's "C" criteria findings, the weight of the medical evidence in the record fails to show plaintiff meets or equals Listing 12.04(C)(2). Although Dr. Gustavson did testify he thought that with "the depressions and the manias and the paranoid symptomatology that's very prominent in his case, along with his back problem," plaintiff "probably would meet C2 under [Listing] 12.04." Tr. 527. Earlier in his testimony, however, Dr. Gustavson also stated there was no indication in the record that plaintiff's bipolar disorder met or equaled the severity of any impairment contained in the Listings. Tr. 526. Plaintiff argues that Dr. Gustavson clearly was referring here only to the "B" criteria of Listing 12.04. The undersigned finds this assertion to be wholly without merit, as the question posed to Dr. Gustavson made no mention at all of the "B" criteria, nor does the context in which the question was posed indicate he was referring to the "B" criteria in testifying that plaintiff did not meet or equal any of the Listings.

As noted above, furthermore, the medical expert at the first administrative hearing testified that he did not feel plaintiff met or equaled any impairment contained in the Listings. Other medical evidence in record concerning plaintiff's mental impairments prior to his date last insured also fails to show that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate. For example, in late February 1986, plaintiff reported he had been stable for the past year on his current dosage of medication. Tr. 453. In late March 1986, plaintiff's "[m]anic/depressive illness" was noted to be "currently under good control on present medication." Tr. 452.

In late November 1988, plaintiff stated that as long as he took his medication he functioned well. Id. In late January 1990, and then again in late March 1990, plaintiff was assessed as being stable. Tr. 446-47. The same assessment was made in early October 1990, and mid-February 1991. Tr. 445-46. Plaintiff's mental functioning was deemed to be within normal limits on his medication in late November 1992 (just one month prior to his date last insured), including normal mood, affect, thought processes, and thought

REPORT AND RECOMMENDATION
Page - 7

content. Tr. 209. Medical records for the period during which plaintiff was incarcerated also show that he remained basically stable on medication. Tr. 181, 183, 185. Indeed, during a psychiatric evaluation that he underwent in early June 1991, plaintiff reported he was "currently having no symptoms," and believed he was "doing quite well" on his medications. Tr. 198. The evaluator further noted as follows:

> He seemed relaxed and comfortable throughout the interview. He maintained good eye contact. His intelligence seems to be average or above and his fund of knowledge adequate. While he has a history of some fairly pronounced psychotic symptoms, he showed no evidence of a thought disorder in this interview. His speech was not concrete; he was able to abstract easily. There was no evidence of thought insertion or thought withdrawal; there was no paranoia. He denies auditory and visual hallucinations, although he attributes the fact that he has none to taking his medications on a regular basis. He describes his mood as "good;" he is sleeping well except for back pain which occasionally keeps him awake. His appetite is good and he does not report any anhedonia. His concentration is excellent and his judgment is intact.

Tr. 200.

During a psychiatric evaluation performed in late August 1994, plaintiff reported that he had "not had a full-blown manic episode since 1982." Tr. 222. He further reported that he believed his "psychiatric condition" was "controlled by his present" medication, and that he did not feel he needed "any additional treatment." Tr. 223. A review of plaintiff's psychiatric system revealed the following findings:

> There is no variation of mood. He does not feel depressed and he denied cognitive symptoms of depression. He denied elevated mood problems. He told me that his present medications stabilize his manic cycling. He denied panic or phobic symptoms. He denied psychotic symptoms. He denied cognitive problems.

Id. His mental status examination was similarly unremarkable:

> He was alert and oriented in all spheres and his narrative was logical, coherent, and goal directed. There was an absence of thought process or thought content disorder. He was somewhat cautious and defensive in his narrative. He did not have any evidence of an active mood disorder. His affect was flexible. His cognitive function was intact including memory function, intellectual function, and judgment. There was no evidence of pain behaviors or abnormal behaviors.

Tr. 224-25. The evaluator concluded that while plaintiff required ongoing medication treatment, this did "not present a barrier to his return to continuous gainful employment." Tr. 225.

In light of the medical evidence in the record concerning the state of plaintiff's mental impairments and limitations prior to his date last insured discussed above, the undersigned thus is inclined to uphold the ALJ's findings with respect to the testimony of Dr. Gustavson. As such, despite defendant's agreement to the contrary, and although this matter is being remanded for further administrative proceedings due to the errors discussed below, the undersigned finds the Commissioner is not obligated to re-consider the ALJ's

findings regarding Dr. Gustavson's testimony on remand.

III.     The ALJ Erred in Assessing Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

In her most recent decision, the ALJ stated that she found plaintiff's "allegations regarding his limitations" to be "not totally credible for the reasons set forth in the body of the decision." Tr. 483. While ALJ did not set forth any such reasons in the body of her decision, she did state that "[u]nless otherwise noted, I hereby incorporate the analysis and conclusions of my prior decision dated October 9, 2001." Tr. 478. The ALJ's prior findings regarding plaintiff's credibility consisted of the following:

> The testimony from the claimant and his former wife was not particularly helpful. Their credibility, in fact, is difficult to assess when they are attempting to recall symptoms from over 9 to 11 years ago. Their memory is also affected by the intervening years since December 1992, when other symptoms of increasing severity have appeared. The

previously discussed medical evidence concerning the stability of his impairments and their control with medication contradicts their testimony concerning the severity of his mental impairments.

Tr. 25. Plaintiff argues the above reasons are insufficient for discounting his credibility. The undersigned agrees.

First, the undersigned does not find the ALJ's determination to discount plaintiff's credibility due to the amount of time that had passed since the period prior to his date last insured to be valid, as it is not specific to plaintiff. In other words, this reason could be applied to any claimant, regardless of whether or not that claimant is in fact able to recall accurately the impairments and limitations he or she had during a time period that has long passed.

A determination that a claimant's complaints are "inconsistent with clinical observations" though can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). On the other hand, the ALJ may not discredit the claimant's testimony solely because his or her subjective complaints are unsupported by objective medical evidence. Lester, 81 F.3d at 834. Here, as discussed above, the objective medical evidence in the record concerning plaintiff's mental impairments and limitations show that his bipolar disorder was largely controlled and stable on medication. Because this is the only valid reason the ALJ provided for discounting plaintiff's testimony, however, the ALJ's credibility determination cannot be upheld.

IV.     The ALJ's Evaluation of the Lay Testimony

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Plaintiff argues the ALJ failed to provide germane reasons for discounting the lay witness testimony

from his former wife. The undersigned disagrees. As noted above, the ALJ gave the same reasons for discounting plaintiff's credibility as she did for discounting the testimony of his former wife. While, also as discussed above, those reasons were inadequate for discounting plaintiff's credibility, they are sufficient for rejecting the testimony of his former wife. Specifically, the ALJ found that the testimony of plaintiff's former wife was contradicted by the medical evidence in the record, which showed that plaintiff's mental impairments and limitations were stable and controlled on medication. This is a proper basis upon which to discount lay witness testimony. Thus, as with Dr. Gustavson's testimony discussed above, even though defendant has agreed to remand this matter in part to re-consider the testimony of plaintiff's former wife, the undersigned finds the Commissioner is not obligated to do so on remand.

V. <u>The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity</u>

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. <u>Id.</u> Residual functional capacity thus is what the claimant "can still do despite his or her limitations." <u>Id.</u>

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. <u>Id.</u> However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." <u>Id.</u> Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u> In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." <u>Id.</u> at *7.

With respect to plaintiff's residual functional capacity, the ALJ found as follows:

> In a Physical Capacity Evaluation completed in July 1990 a few months after his surgery, the claimant showed a performance tolerance level in the light-medium physical demand range. Exhibit 27. At that time the claimant was interested in pursuing a business in home inspection and pest control and the therapist opined he had the potential of physically tolerating his preferred job.
>
> Accordingly, I find that during the relevant period, the claimant retained the following residual functional capacity: to perform light to medium work activity, but limited to

REPORT AND RECOMMENDATION
Page - 11

superficial interaction with the public, coworkers and supervisors.
Tr. 480-81.

Plaintiff argues the ALJ erred in assessing him with the above residual functional capacity, because while the ALJ based her determination on the above-referenced physical capacities evaluation, she did not include the evaluation's limitations concerning his manipulative limitations. The undersigned agrees. That evaluation stated plaintiff had "slow and inefficient dexterity with right hand function," and had particular "trouble with fine motor function activities." Tr. 457. While the evaluation further stated that plaintiff was able to perform fine manipulation frequently, it indicated that he could do so with "slow technique." Tr. 458. The ALJ, however, although apparently relying on this evaluation to determine plaintiff's residual functional capacity, did not adopt these specific manipulative limitations.

Plaintiff also argues the ALJ erred in assessing his residual functional capacity by ignoring and/or overlooking evidence in the record indicating he had significant right calf atrophy (Tr. 443) and significant weakness in his lower right extremity (Tr. 183). Other medical evidence in the record, however, tends to support the ALJ's determination that plaintiff is capable of performing at a light to medium exertion level during the relevant time period. See Tr. 159-60, 170, 209, 212-16, 218-20, 447-53, 455-59, 961-67, 969, 973-74, 980-81. Nevertheless, since this matter is being remanded for further consideration of plaintiff's residual functional capacity due to the ALJ's error noted above, on remand the Commissioner also shall reconsider the medical evidence in the record concerning plaintiff's exertional capacity.

VI.   The ALJ's Hypothetical Question and Step Five Analysis

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ posed the following hypothetical question to the vocational expert at the most recent

administrative hearing:

> We're looking at a younger individual with 12 years of education, and this individual has an RFC as follows. The individual is able to sit or stand for two to three hours at a time for a total of four to six hours in an eight-hour day. This individual can walk for one to two hours at a time for a total of four to six hours in an eight-hour day. This individual can occasionally lift up to 31 pounds, frequently 15, and can carry up to 30 pounds frequently. This individual has some limitations regarding dexterity . . . The claimant has slow use of his right dominant hand and would have trouble with fine motor functional activities with the right dominant hand. Claimant should also avoid twisting activities. Claimant has non exertional limitations or restrictions which would provide that he should have limited to superficial contact with members of the public, with coworkers and limited interaction with supervisors. The claimant should be capable of following work rules and performing the ability to understand, remember and carry out at least simple job instructions and directions. Now assuming that the claimant would work best in environments where he essentially worked alone and did not have to interact essentially during the performance interact with other individuals during the course of this work performance.

Tr. 532-33. Plaintiff first argues this hypothetical question is defective because it failed to incorporate the manipulative limitations set forth in the physical capacities evaluation discussed above. It appears though that the hypothetical question, as set forth above, does incorporate those limitations.

Plaintiff next argues the ALJ's step five analysis suffers from four other errors. First, he asserts that although the ALJ limited him to understanding, remembering and carrying out simple job instructions and directions, each job identified by the vocational expert that plaintiff could still do (Tr. 533-34) involved a higher level of reasoning. The two jobs the vocational expert identified are defined by the Dictionary of Occupational Titles ("DOT") to require "Level 2" reasoning. See DOT 372.667-038 (security guard); DOT 239.567-010 (office helper). The DOT defines Level 1 and 2 reasoning as follows:

LEVEL 2

Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

LEVEL 1

Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, Appendix C. Plaintiff argues the ALJ's limitation to simple job instructions and directions means Level 1 reasoning, as defined above, which would preclude plaintiff from being able to perform either of the above jobs. While it is not clear Level 1 reasoning is synonymous with that limitation, the undersigned does find it to be more analogous to that limitation than Level 2 reasoning.

REPORT AND RECOMMENDATION
Page - 13

  The vocational expert's testimony, therefore, appears to conflict with the information contained in the DOT. The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the Dictionary of Occupational Titles ("DOT"). <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. <u>Haddock</u>, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. Here, however, it does not appear the ALJ resolved this conflict before relying on the testimony of the vocational expert. <u>See</u> Tr. 534. To that extent, the ALJ erred.

  Plaintiff also argues the ALJ erred by failing to include in the hypothetical question that he had a moderate limitation in concentration, persistence or pace, even though the ALJ found him to have such a limitation under the "B" criteria of Listing 12.04. While this was a finding the ALJ made at step three of the disability evaluation process in determining whether or not plaintiff met or equaled any the criteria of any impairment contained in the Listings (Tr. 480), the ALJ provided no reason why that same limitation should not be included in plaintiff's residual functional capacity. Thus, on remand the Commissioner shall re-determine whether or not to include that limitation.

  Plaintiff further argues the ALJ erred by failing to identify any transferable skills plaintiff had, even though she found he was capable of performing the job of security guard, which is defined by the DOT as being "semi-skilled." The ALJ's findings regarding plaintiff's transferrable skills, however, are unclear. For example, while the ALJ found plaintiff had "transferrable skills from skilled work previously described in the body of the decision," no such specified skills were noted therein. <u>See</u> Tr. 481, 483. Thus, it is not clear plaintiff would be unable to do the job of security guard or semi-skilled work on this basis. As such, this is another issue the Commissioner shall re-consider on remand.

  Lastly, plaintiff argues that although the physical capacities evaluation upon which the ALJ relied to assess his residual functional capacity limited him to performing frequent manipulation slowly, both jobs the vocational expert identified plaintiff could still do are defined by the DOT to require the ability to perform frequent manipulation without any reference to the ability to do it slowly. <u>See</u> DOT 372.667-038; DOT 239.567-010. Thus, plaintiff asserts, based on this reason as well, he would be precluded from being able to perform these jobs. It is not entirely clear, however, whether a limitation as to the pace at which an

1  individual is able to perform frequent manipulation would constitute a bar to being able to perform either

2  job adequately. This too, therefore, is an issue the Commissioner shall reconsider on remand.

3  VII.   This Matter Should Be Remanded for Further Administrative Proceedings

4  The court may remand this case "either for additional evidence and findings or to award benefits."

5  Smolen, 80 F.3d at 1292. Generally, when the court reverses an ALJ's decision, "the proper course, except

6  in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v.

7  Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is

8  clear from the record that the claimant is unable to perform gainful employment in the national economy,"

9  that "remand for an immediate award of benefits is appropriate." Id.

10  Benefits may be awarded where "the record has been fully developed" and "further administrative

11  proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

12  1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Plaintiff argues this matter should be remanded to the Commissioner for an award of benefits based on the ALJ's errors in evaluating the medical and other evidence in the record. However, because, as explained above, issues still remain as to whether plaintiff is in fact disabled, the more appropriate course is to remand this matter for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 17,**

REPORT AND RECOMMENDATION
Page - 15

1  **2006**, as noted in the caption.

2      DATED this 19th day of January, 2006.

                                Karen L. Strombom
                                United States Magistrate Judge